# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 25-1788V**

| | |
|---|---|
| HANNAH BRANNING,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: October 14, 2026 |

*Laura Levenberg, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Camille Jordan Webster, U.S. Department of Justice, Washington, DC, for Respondent.*

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

On October 22, 2025, Hannah Branning filed a petition asserting that she suffered a shoulder injury related to vaccine administration ("SIRVA") and/or brachial neuritis resulting from an influenza ("flu") vaccine received on September 24, 2024. Petition at 1. Respondent has filed his Rule 4(c) Report (ECF No. 19) asserting that Petitioner is not entitled to compensation. The claim was assigned to the "Special Processing Unit" (the "SPU").

For the reasons set forth below, I find that Petitioner has not established by a preponderance of the evidence that the onset of her shoulder pain likely occurred within 48 hours of vaccination, and thus her Table SIRVA claim is dismissed. But an off-Table brachial neuritis claim is viable, and the matter will be transferred out of the SPU for resolution of that version of the claim.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

## I. Relevant Factual History

Petitioner received a flu vaccine in her right arm on September 24, 2024. Ex. 1 at 6. She first sought medical attention for right shoulder pain just six days later, on September 30, 2024. Ex. 8 at 68. At that time, however, she complained of ongoing pain "for the last 2 days," explaining she awoke with pain on Saturday morning – meaning September 28th, four days after vaccination. *Id*.

Three days later (October 3, 2024), Petitioner saw an orthopedist for evaluation of right shoulder pain. Ex. 9 at 6. She explained that her shoulder "began hurting significantly on 9/27/2024" – three days after vaccination – adding that "she did receive the flu shot few days prior." *Id*.

A month after vaccination (October 24, 2024), Petitioner underwent a physical therapy ("PT") evaluation of her right shoulder. Ex. 3 at 146. The record lists the onset of her condition as September 27, 2024 (three days after vaccination), explaining that she received the flu vaccine on September 24th, and "by 9/27/24 she had significant swelling, throbbing, heat in the shoulder." *Id*. Petitioner was assessed with SIRVA. *Id*. at 147. Petitioner continued PT until April 2025.

On March 24, 2025, Petitioner attended a PT session. Ex. 3 at 53. During the session, she told the therapist that she "[h]as now met with a vaccine lawyer due to being 6 months out." *Id*.

On May 29, 2025 – now eight months after vaccination – Petitioner underwent an EMG/NCV study, and saw Dr. J. Scott Bainbridge to discuss the study. Ex. 4 at 9-16. At that time, she reported that following vaccination, she "rapidly developed a fluid collection at the right deltoid and within 48 hours noted weakness of shoulder abduction and external rotation." *Id*. She further reported "associated pain, numbness and tingling into the right lateral shoulder, arm, and into the proximal forearm in that 48 hours post injection timeframe." *Id*. Dr. Bainbridge noted abnormalities on the EMG/NCV and diagnosed Petitioner with brachial plexus disorders, noting "severe axonal loss involving the right axillary nerve and the suprascapular nerve" consistent with a "Parsonage-Turner response." *Id*. at 11.

Petitioner's declaration does not address the onset of her shoulder pain. Ex. 7. Beyond recounting what the medical records contain, the Petition also does not address the matter.

## II. Respondent's Arguments

Respondent asserts that Petitioner has not preponderantly established that the onset of her shoulder pain occurred within 48 hours of vaccination. Respondent's Report at *7-9. Respondent argues that the earliest and most contemporaneous medical records

place the onset of her shoulder pain outside of the 48-hour post-vaccination timeframe required to substantiate a Table SIRVA claim. *Id*. And the May 2025 consultation where Petitioner first reported that her pain began within 48 hours of treatment occurred after Petitioner had met with counsel about pursuing a vaccine injury claim. *Id*. at *9.

Respondent also argues that Petitioner's EMG/NCV study results were consistent with Parsonage-Turner. Respondent's Report at *9. Because she was diagnosed with a neurological condition, Respondent asserts that she cannot establish a Table SIRVA. *Id*.

## III. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## Analysis

Based on the record as it stands, the evidence preponderates in favor of a finding that the onset of Petitioner's shoulder pain did not occur within 48 hours of vaccination, but instead occurred three or four days after vaccination. Treatment records that are close in time to vaccination (and hence deserving of greater evidentiary weight) specify onset dates occurring more than 48 hours after vaccination.

Thus, six days after vaccination, Petitioner described a two-day history of pain (which would place onset four days after vaccination), adding that she awoke with pain on Saturday –four days after vaccination. Ex. 8 at 68. Although she explained the onset of her pain in two different ways, both place it outside of the 48-hour timeframe for a SIRVA claim. Three days later, Petitioner described her pain as beginning on September 27th – three days after vaccination. Ex. 9 at 6. And a month after vaccination, a PT evaluation also lists the onset of her condition as September 27th, three days after vaccination.

Only eight months after vaccination (and after starting the process of pursuing litigation for her vaccine injury) did Petitioner specify that her pain began within 48 hours of vaccination. Ex. 4 at 9. And this record is unconvincing for several reasons. First, it is far less contemporaneous than the records just days after vaccination, which consistently placed onset later. Second, it appears to stand alone in suggesting the onset of symptoms within the time required to substantiate a Table SIRVA claim.

Despite my finding herein, Petitioner may still have a viable off-Table claim of brachial neuritis. While brachial neuritis is not a Table injury for the flu vaccine, it is for a different vaccine, with a requirement of first symptoms occurring between 2-28 days after vaccination (a timeframe Petitioner's symptoms appear to fall within). There is some evidence to support such a diagnosis as well.

## Conclusion

Because Petitioner cannot preponderantly establish that the onset of her symptoms occurred within 48 hours of vaccination, her Table SIRVA claim cannot proceed and is dismissed. This case is hereby reassigned randomly to a Special Master by the Clerk's Office for resolution of a causation-in-fact claim alleging brachial neuritis as the injury.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master